Amey J. Park (NJ Bar No. 070422014)
**BERGER MONTAGUE PC**
1818 Market Street,
Suite 3600
Philadelphia, PA 19103
Telephone: (267) 831-4701
Facsimile: (215) 875-4604
Email: apark@bm.net

*Counsel for Plaintiffs and the Proposed Class*
*Additional Counsel listed on Signature Page*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBERTA LONSK, on behalf of herself and all others similarly situated, | Civil Action No. 2:21-cv-19808-JXN-ESK |
| Plaintiff, | <u>**AMENDED CLASS ACTION COMPLAINT**</u> |
| v. | |
| MIDDLESEX WATER COMPANY AND 3M COMPANY, | <u>**JURY TRIAL DEMANDED**</u> |
| Defendants. | |

Plaintiff Roberta (Bobbie) Lonsk ("Plaintiff"), through her undersigned counsel, on behalf of herself and all others similarly situated, brings this action against Defendants Middlesex Water Company ("Middlesex Water") and 3M Company ("3M" and together with Middlesex Water, "Defendants"). In support hereof, Plaintiff alleges as follows:

### <u>NATURE OF THE ACTION</u>

1.      Plaintiff brings this class action against Defendants individually and on behalf of all New Jersey residents who are customers of Defendant Middlesex Water and who receive all or some of their drinking water from that company's Park Avenue Treatment Plant (the "Class"), as

further described in the October 22, 2021 Notice to Customers issued by Defendant Middlesex Water ("October 22 Notice").  A true and correct copy of the October 22, 2021 notice is attached hereto as Exhibit A.

2.      This lawsuit arises out of harm that has been proximately caused by Defendants' negligent and reckless conduct in contaminating the drinking water of Plaintiff and the Class; failing to promptly and properly remediate the contamination; failing to promptly notify Plaintiff and the Class about the contamination; and failing to provide Plaintiff and the Class with safe and clean water, and otherwise protect them from the risk of further harm from exposure to toxic chemicals.

3.      The underlying contamination at issue resulted from Defendant 3M's decades-long manufacturing and distribution of Perfluorooctanoic Acid ("PFOA"). PFOA is a highly toxic chemical classified as a per- and polyfluoroalkyl substance ("PFAS") that has been associated with numerous adverse human health effects, including a higher incidence of kidney and testicular cancers in communities with a substantial exposure to PFOA through drinking water. As a result of Defendant 3M's conduct, dangerous amounts of PFOA were discharged across New Jersey, contaminating the local environment, including the drinking water distributed by Middlesex Water, and used by Plaintiff and the Class.

4.      In fact, pursuant to the New Jersey Department of Environmental Protection's Statewide PFAS Directive, Information Request and Notice to Insurers of March 25, 2019, "3M is a person in any way responsible for PFOA and PFOS discharged in New Jersey as the primary

manufacturer of PFOA, which it supplied to DuPont, Solvay and others, and PFOS, which were both discharged across New Jersey's environment."[1]

5.      Because of the health hazards associated with PFOA, in March 2017, the New Jersey Drinking Water Institute ("DWQI") made a recommendation to New Jersey's Department of Environmental Protection ("NJDEP") to establish enforceable Maximum Contaminant Levels ("MCL") for PFOA (14 parts per trillion ("ppt")). In October 2017, the NJDEP announced that it would accept the DWQI recommendations and would move forward with amending the Safe Drinking Water Act to include enforceable MCLs for PFOA and PFOS.  As such, in 2020, NJDEP established a drinking water standard for PFOA, setting an enforceable MCL for PFOA at 14 ppt.

6.      Due to Defendant 3M's production and distribution of PFOA in New Jersey, the drinking water used by Plaintiff and Class members has been contaminated with PFOA exceeding the current MCL since at least February 2018. More recently, and as further described below, analysis of a water sample collected in August 2021 yielded a reading of 36.1 ppt, and a subsequent water sample that November showed a reading of 27.7 ppt.[2]

7.      Moreover, PFOA has likely been in the water distributed by Middlesex Water for far longer.  As Middlesex Water itself has admitted "[t]he PFAS chemicals were first detected in

---

[1] State of New Jersey Department of Environmental Protection, Statewide PFAS Directive, Information Request and Notice to Insurers, March 25, 2019 ("NJ PFAS Directive"), https://www.nj.gov/dep/docs/statewide-pfas-directive-20190325.pdf (last visited April 14, 2022).
[2] New Jersey Drinking Water Watch, Middlesex Water Company Sample Results for Perfluorooctanoic Acid (PFOA), https://www9.state.nj.us/DEP_WaterWatch_public/JSP/SingleResults.jsp?tinwsys=314&tsaanlyt=930&aname=PERFLUOROCTANOIC%20ACID%20(PFOA) (last visited on April 14, 2022).

Middlesex [Water's] water supply through water quality sampling mandated by the Unregulated Contaminant Monitoring Rule 3 ("UCMR3"), part of the 1996 Safe Drinking Water Act."[3]

8.      Defendants further exacerbated and prolonged the crisis by failing to promptly notify Plaintiff and the Class of the contamination issues.  Middlesex Water knew of the August 2021 PFOA exceedance by at least September 7, 2021 yet failed to notify Class members until October 22, 2021.  This exposed Plaintiff and Class members, and their families and guests, to an unnecessary risk to their health and well-being.   Moreover, although Middlesex Water "commenced the interim shut down of the Park Avenue Facility" starting on November 9, 2021, the shutdown was not announced to customers until December 16, 2021.

9.      Defendants 3M and Middlesex Water failed in their duties to protect Plaintiff and the Class from harm, to properly and promptly remediate the contamination, and to provide basic resources such as bottled water and home water filters or home water treatment devices certified to reduce levels of PFOA.  Because Defendants were wholly ineffective in this regard, Plaintiff and members of the Class were forced to incur critical and immediate costs in order to obtain safe and clean water for use in their daily life.

10.      As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have sustained damage to their property, including, but not limited to, costs associated with remediating the water contamination and ensuring that Plaintiff and the Class have safe and clean water to use.  The contamination of Plaintiff's and the Class's water supply unreasonably interfered with their quality of life and the use and enjoyment of their property.  To this end, Plaintiff and the Class have been damaged and have incurred substantial expenses in addressing the disruption to

---

[3] *See* Middlesex Water Company's Nov. 30, 2021 Letter Brief in Opposition to Plaintiffs' Motion for Injunctive Relief from *Thomas Vera, et als. v. Middlesex Water Company*, Docket No. MID-L-6306-21 (N.J. Super. Ct. Law Div.), attached hereto as Exhibit B.

their lives caused by the water pollution issues, including, but not limited to, the cost of bottled water and the cost of installing a home water filter or home water treatment device certified to reduce levels of PFOA.

11.     Plaintiff seeks to recover, for herself and the Class, all costs and economic damages associated with the contamination of her drinking water by Defendants' failure to properly remediate the contamination issue, and to otherwise promptly facilitate the provision of safe and clean water to Plaintiff and the Class.  Further, Plaintiff and the Class seek damages for all out-of-pocket expenses and economic damages related to dealing with these problems, including, without limitation, expenses related to purchasing bottled water and a home water filter or home water treatment device certified to reduce levels of PFOA.  Plaintiff and the Class also seek damages associated with the diminution of value of their properties resulting from the water contamination issues.  Plaintiff, individually and on behalf of the Class, also seeks injunctive relief requiring Defendants to pay for relief in accordance with their obligations under the law.

## PARTIES

### Plaintiff

12.     Plaintiff Roberta (Bobbie) Lonsk is a resident of Edison, New Jersey, one of the municipalities affected by the water contamination issue.  She lives with her husband and pet dog, whom she is training to be a therapy animal, on Visco Drive, a street that is within the area affected by the contamination issue, as shown on the map referenced in the October 22 Notice and on Defendant Middlesex Water's website.

13.     As a result of the water issue, Plaintiff and her family have incurred economic damages, including loss of enjoyment and use of their home, as well as costs associated with the necessary purchase of safe and clean water to use in their daily life.

*Defendants*

14.     Defendant Middlesex Water Company ("Middlesex") is a corporation organized and existing under the laws of the State of New Jersey having its principal place of business at 485C Route 1 South, Suite 400, Iselin, New Jersey 08830.

15.     Middlesex was incorporated as a water utility company in 1897 and owns and operates regulated water utility and wastewater systems primarily located in New Jersey and Delaware, including a public water system within Middlesex County, New Jersey.

16.     According to the company's public filings, the Middlesex Water system in New Jersey "treats, stores and distributes water for residential, commercial, industrial and fire protection purposes," and provides water services to approximately 61,000 retail customers, primarily located in eastern Middlesex County, New Jersey.[4]  It also provides water under wholesale contracts to the City of Rahway, Townships of Edison and Marlboro, the Borough of Highland Park, and the Old Bridge Municipal Utilities Authority.  At the company's Park Avenue facility, groundwater was pumped from wellfields, collected and treated, and became part of the drinking water supply that Middlesex Water provided to its customers, including Plaintiff and the Class.

17.     Middlesex Water's retail customers are located in an area of approximately 55 square miles in Woodbridge Township, the City of South Amboy, the Boroughs of Metuchen and Carteret, portions of the Township of Edison and the Borough of South Plainfield, all in Middlesex County, and a portion of the Township of Clark in Union County.  Retail customers are located in generally well-developed areas of central New Jersey and include a mix of residential customers, large industrial concerns and commercial and light industrial facilities.

---

[4] Middlesex Water Company, Annual Report (Form 10-K) (Feb. 25, 2021).

18.    Middlesex Water's contract customers comprise an area of approximately 110 square miles with a population of over 200,000.  Contract sales to the Township of Edison and the City of Rahway are supplemental to the water systems owned and operated by these municipalities.

19.    Defendant 3M Company ("3M") is a Delaware corporation with its principal place of business located in St. Paul, Minnesota. 3M manufactures and distributes a broad range of products, including building materials, adhesives, and medical and home cleaning supplies.  The company has over 60,000 products in its portfolio.  3M does business throughout the United States and globally and conducts substantial business in the State of New Jersey.  Among its facilities, 3M has maintained a 204,000 square foot plant in Flemington, New Jersey since 1996.

## JURISDICTION AND VENUE

20.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d).  The matter in controversy in this class action exceeds $5,000,000.00 exclusive of interest and costs, and Plaintiff and members of the Class are citizens of a state other than the state in which Defendant 3M is incorporated and has its primary place of business.

21.    Venue is proper pursuant to 28 U.S.C. §1391(b) because: (a) a substantial part of the events giving rise to this action occurred in this District; and (b) the property that is the subject of this action is located in this District.

22.    As a result of Defendant 3M marketing, distributing, promoting, and selling its products and/or services throughout New Jersey, either directly or indirectly through third parties or related entities, Defendants obtained the benefits of the laws of New Jersey and profited from New Jersey commerce.

23.     Defendant 3M conducted systematic and continuous business activities throughout the State of New Jersey and otherwise intentionally availed itself of the market in New Jersey through its promotion, marketing, and sale of its products and/or services.

## FACTUAL ALLEGATIONS

## I.     PFAS and Perfluorooctanoic Acid ("PFOA")

24.     PFAS are known as "forever chemicals," a group of man-made chemicals that are widely used and have components that break down very slowly over time.  These chemicals repel water and oil and are resistant to heat and chemical reactions.  They have been manufactured since the 1940s and are found in many different consumer, commercial, and industrial products, including Teflon nonstick products, stains and water repellants, paints, cleaning products, food packaging, firefighting foams, and other products.  PFAS chemicals are all identified by elemental bonds of fluorine and carbon, which are extremely strong and difficult to disintegrate in the environment and in human bodies.

25.     PFAS can enter drinking water through industrial release to water, air, or soil, through discharges from sewage treatment plants, land application of contaminated sludge, and the use of firefighting foam.  It can remain in drinking water for thousands of years if left untreated.

26.     Some studies of the general population, communities with drinking water exposures, and exposed workers, suggest that PFAS increases the risk of a number of health effects.  Indeed, a growing body of scientific research has shown that exposure to PFAS in the environment may be linked to potential harmful health effects including liver damage, thyroid disease, decreased fertility, high cholesterol, obesity, hormone suppression, and cancer.

27.     Further, exposure to PFAS before birth or in early childhood may result in decreased birth weight, decreased immune responses, and hormonal effects later in life.  Because

infants and children consume more water per body weight than older individuals, their exposures may be higher than adults in communities with PFAS in drinking water, and they may also be more sensitive to the effects of PFAS.

28.     One type of PFAS is PFOA, a manufactured substance that is one of a group of chemicals used to make fluoropolymer coatings and products that resist heat, oil, stains, grease, and water.  Like other PFAS chemicals, PFOA persists in the environment and does not break down.  PFOA has been identified in bodies of water and in a variety of land and water animals.

29.     The American Cancer Society has acknowledged that "PFOA has the potential to be a health concern because it can stay in the environment and in the human body for long periods of time."[5]  Further, studies have found that PFOA is now present worldwide at very low levels in just about everyone's blood, though higher blood levels have been found in community residents where local water supplies have been contaminated by PFOA.  The most consistent human health effect findings for PFOA are increases in serum cholesterol, some liver enzymes, and uric acid levels.  In addition, PFOA has been associated with decreased antibody response following vaccination, has been found to cause tumors in rodents and, in communities with a substantial exposure to PFOA through drinking water, has been associated with a higher incidence of kidney and testicular cancers.

30.     Given the dangers of PFOA, New Jersey's Department of Environmental Protection established a drinking water standard for the chemical, setting an enforceable MCL for PFOA at 14 ppt.

---

[5] American Cancer Society, Inc., https://www.cancer.org/cancer/cancer-causes/teflon-and-perfluorooctanoic-acid-pfoa.html (last visited April 14, 2022).

## II.     Defendant 3M Pollutes New Jersey Drinking Water with PFOA

31.     For nearly 80 years, 3M has produced PFAS for use in the manufacture of a variety products, including electronic devices such as cell phones, tablets and semi-conductors, surgical gowns and drapes, and commercial aircraft and low-emissions vehicles.  The PFAS that 3M has produced do not easily degrade and 3M admits that these compounds have the potential to build up over time.

32.     3M began mass-manufacturing PFOA in 1947.  By 1950, a 3M mice study revealed that PFAS build up in blood.  A Stanford University study six years later found that PFAS binds to proteins in human blood.

33.     By the 1960's 3M and the U.S. Navy developed aqueous film-forming foam ("AFFF") a firefighting foam that contains PFOA.  During this period, animal and human studies linked the chemical to liver damage.  Further, a 1963 3M technical manual deemed PFAS toxic and a 1966 3M study found that PFAS caused acute oral toxicity in rats.

34.     By the 1970's additional research conducted by 3M confirmed that PFOA is toxic. It was also around this time that 3M conducted research that proved its employees had PFOA in their blood.

35.     By the 1980's the U.S. Navy determined that AFFF had adverse environmental effects and killed aquatic life.  Further, in 1981, 3M reassigned female workers after animal studies revealed that PFAS damages the eyes of a developing fetus.  Two years later, 3M identified PFAS' potential harm to the immune system.  By the end of the decade, a 3M study found elevated cancer rates among PFAS workers.

36.     The 1990s brought still more connections between PFOA and cancer in humans, as a 1990 3M study tied a risk of testicular cancer to exposure to PFOA and, in 1992, a 3M scientist

found that male PFOA workers were more likely to die from prostate cancer.  By 1998, 3M provided the EPA with evidence that PFAS accumulates in blood.

37.     In the face of overwhelming evidence of the dangers of PFOA to the environment and human health (largely the result of its own internal research), and under pressure from the EPA, on May 16, 2000 3M announced that it would phase out the production of PFOA.

38.     The decision to phase out production was based in part on 3M data supplied to the EPA, which indicated that the chemicals "are very persistent in the environment, have a strong tendency to accumulate in human and animal tissues and could potentially pose a risk to human health and the environment over the long term."

39.     3M knew that PFOA was harmful to people and the environment, including from its own studies dating as far back as the 1950s.  Yet 3M persisted in manufacturing and selling PFOA for over 50 years, undaunted by its knowledge of the devastating impact the chemical was having (and would have) on the environment and human health.

40.     Moreover, though 3M has phased out production of PFOA globally, it still produces certain PFAS compounds, and it is currently defending numerous lawsuits, and is subject to various governmental regulatory proceedings and inquiries, relating to the production and use of PFAS in a variety of jurisdictions.

41.     The impact of 3M's production and distribution of PFOA in New Jersey is well-documented. NJDEP has identified 3M as "the dominant global producer of PFOA" responsible for manufacturing approximately 85% or more of the total worldwide volumes of PFOA.  It has further found that, as the primary manufacturer of PFOA, 3M was responsible for PFOA

discharged in New Jersey when it supplied the chemical to companies operating in the state, which caused the chemical to be discharged across New Jersey's environment.[6]

42.     For instance, 3M supplied PFOA to DuPont for use in its manufacturing processes until at least the early 2000s, and DuPont discharged this PFOA in New Jersey, including at its Parlin facility in Parlin, New Jersey (Middlesex County).  This resulted in the contamination of New Jersey's environment.

43.     Further, NJDEP found that 3M knew of the health and environmental impacts of PFAS in New Jersey for decades, including that the chemicals could leach into groundwater and contaminate the environment.

44.     Yet 3M persisted in manufacturing and distributing these chemicals and releasing them into New Jersey's environment.  This has resulted in damage to the state's natural resources and the contamination of the drinking water used by Plaintiff and the Class.

45.     3M knew that its manufacture and distribution of PFOA in New Jersey would produce this result and cause injury to Plaintiff and the Class.  Despite its knowledge of the dangers of PFOA and the potential harm that could result from the continued production and distribution of the chemical, 3M concealed and/or failed to provide this information to governmental regulators, the public, or Plaintiff and the Class.  In the absence of such notice, Plaintiff and the Class were unaware of the risks of PFOA to their drinking water.

46.     As 3M acknowledges in its public filings, it has been subject to substantial litigation relating to its manufacturing and distribution of PFOA and its impact on New Jersey communities and the environment.  For instance, in March 2019, the New Jersey Attorney General filed two

---

[6] *See* NJ PFAS Directive, https://www.nj.gov/dep/docs/statewide-pfas-directive-20190325.pdf. (last visited April 14, 2022).

actions against 3M and other parties on behalf of the NJDEP and other entities regarding alleged discharges at facilities in Pennsville, New Jersey, and Parlin, New Jersey.  The cases seek to have 3M, among other defendants, pay the costs necessary to investigate, remediate, assess, and restore the affected natural resources of New Jersey.[7]

47.     In addition, 3M is defending two other federal court cases filed by individuals with private drinking water wells near the DuPont and Solvay facilities that were allegedly supplied with PFAS by 3M. 3M is also defending three federal court cases brought by individuals who live near the DuPont and Solvay facilities, alleging personal injury caused by PFAS exposure.  Further, in September 2020, a federal court case was filed against 3M on behalf of the Borough of Hopatcong, alleging PFAS contamination of the public water supply.

48.     3M is also a defendant in a related action brought in this Court by Defendant Middlesex Water, alleging PFAS contamination of its water wells.  This lawsuit seeks damages arising from the intentional, knowing, reckless, and/or negligent acts and/or omissions of 3M in connection with the PFOA contamination of Middlesex Water's drinking water supplies.  In fact, in that litigation, Middlesex Water is seeking "between $150M-$200M to effectively remove the PFAS chemicals to low part per trillion standards or non-detect levels using Reverse Osmosis."

49.     The lawsuit filed by Defendant Middlesex Water is part of its purported (but incomplete) strategy to address the elevated PFOA levels in the affected communities.   In addressing the concerns of area residents relating to the elevated PFOA levels in the wake of the October 22 Notice, Middlesex Water produced a slide show which, among other things, summarized the impetus for the lawsuit as follows: "We have filed a lawsuit in the U.S. District Court for the District of New Jersey against 3M Corporation for polluting our groundwater and to

---

[7] 3M Company, Annual Report (Form 10-K) (Feb. 4, 2021).

recoup wellfield remediation costs…We are not the cause of PFOA but now have to remove what 3M has put into our groundwater."[8]

50.      In its lawsuit against 3M, Defendant Middlesex Water alleges that 3M had hundreds of sales of products containing PFAS in New Jersey which "in related court filings, 3M argued were the source of the contamination in Middlesex."[9]  In a recent joint filing in that matter in advance of a status conference with the Court, Middlesex Water asserted that the pending causes of action are "premised on the undisputed fact that 3M manufactured more than 90% of the PFOA and PFOS existing in the world today and which, foreseeably to 3M, have contaminated water supplies across the country including that of Middlesex Water Company."[10]

51.      Middlesex Water also alleges that 3M has "sold PFAS to chemical purchasing customers in the Home Furnishings, Home Fashions, and Automotive market segments in New Jersey," as well as more than a dozen key customers in the state in the "Apparel and Related Businesses, Paper and Packaging, and Performance Chemicals business lines."[11] Specifically, Middlesex Water alleges that 3M "directly, continuously, and systematically sold PFAS" to, among other entities, the following:

    a.  a petroleum industry customer located in Newark, New Jersey;

    b.  an apparel company in Rahway, New Jersey;

    c.  a company in Hammonton, New Jersey in the nonwovens Segment of 3M's Apparel and Related Business Unit;

---

[8] Middlesex Water Company, *Regulation, Risks and Remediation, An Information Session on PFOA* ("Slideshow"), previously available at https://online.flipbuilder.com/ucfo/bplh/.
[9] *See Middlesex Water Company v. 3M Company et al*, Case No. 2018-cv-15366 (D.N.J.), Dkt No. 108 (Second Amended Complaint) ("Middlesex SAC") at ¶17.
[10] *See* 2018-cv-15366 (D.N.J.), Dkt. No. 138 (February 24, 2022 Joint Status Update).
[11] Middlesex SAC at ¶20.

d.  a customer in the Paper and Packaging industry for use at its Milford, New Jersey facility;

e.  a customer in the paper and packaging industry for use at its Ridgefield, New Jersey facility;

f.  a customer in the household additives segment for use at its Jersey City, New Jersey facility;

g.  a customer in the carpet spot cleaners industry for use at its Belle Mead, New Jersey facility;

h.  a customer in the carpet spot cleaners industry for use at its Carlstadt, New Jersey facility;

i.  a customer in the carpet spot cleaners industry for use at its Montvale, New Jersey facility;

j.  a customer in the carpet spot cleaner industry for use at its Wayne, New Jersey facility.

*Id*. at ¶¶23-32.

52.    As a result of Defendant 3M's sale of PFAS to numerous entities for use within New Jersey, PFOA was released into the environment and waterways of New Jersey and, ultimately, the water Plaintiff and members of the Class drink.  Indeed, according to Defendant Middlesex Water, "[p]rior to commercial development and large-scale manufacture and use of PFAS, principally by 3M, no such PFAS had been found, detected, or were present in the environment or [Middlesex Water's] public drinking water supplies."[12]  However, as early as December 2013, Middlesex Water uncovered PFAS chemicals in its water supply when it first

---

[12] *Id*. at ¶42.

conducted sampling pursuant to the Unregulated Contaminant Monitoring Rule 3 (part of the 1996 Safe Drinking Water Act).[13]

53.     Further, Middlesex Water's recent analyses of their water supplies has revealed a plausible direct connection between 3M's manufacture and distribution of PFOA and the contamination of the Class's drinking water. Middlesex Water asserts that it has "at least seventeen wells in its Middlesex County System that are above both EPA's health advisory guideline and/or New Jersey's proposed MCL for PFOS and/or PFOA, individually or combined."[14]  In addition, Middlesex Water has determined that "[m]ultiple PFAS chemicals associated with 3M, such as PFOS, PFHxS and PFBS which are known to be primarily produced by 3M, are present in Middlesex's drinking water supplies."[15]  The company has also discovered that twelve to nineteen percent of the total PFOA in its drinking water supplies "is likely branched PFOA which is suggestive that 3M is the source of the PFOA."[16]  Its analyses have further determined that "[p]erfluorocarboxylates such as PFHpA and PFHxA have been detected in Middlesex's drinking water supplies…chemicals [that] are known to be manufactured by 3M."[17]

54.     Despite knowing that it is responsible for the contamination of the drinking water of Plaintiff and the Class because of its manufacture and distribution of PFOA, Defendant 3M has not remediated the problem that resulted from its conduct nor has it provided Plaintiff and the Class with, or reimbursed them for the costs of, safe and clean drinking water during the period that their drinking water was contaminated.

## III.     Defendant Middlesex Water Provided Plaintiff and the Class with Delayed Notice of the Water Contamination and Failed to Remedy or Remediate the Problems

---

[13] *See* Exhibit B.
[14] Middlesex SAC at ¶91.
[15] *Id*. at ¶92.
[16] *Id*. at ¶93.
[17] *Id*. at ¶94.

55.     Though it claims not to have been the initial cause of the PFOA in the affected groundwater, since discovering elevated levels of PFOA, Defendant Middlesex Water still distributed contaminated water and failed to properly remediate the water contamination issue, failed to promptly inform its customers of the issue, and failed to ensure that its customers had clean and safe water and are otherwise protected from the risk of further harm.

56.     As early as September 7, 2021, Defendant Middlesex Water received notice that the August 2, 2021, groundwater sample from its wellfield was found to have 36.1 ppt of PFOA, at least the third consecutive quarter that PFOA levels exceeded the maximum allowable under the law.  This meant that the Quarterly Running Annual Average of samples collected in the 1st, 2nd, and 3rd quarters of 2021 (25 ppt, 23 ppt, and 36 ppt, respectively) exceeded the maximum contaminant level. Middlesex Water was therefore required to issue a notice to all customers who received any amount of water from the groundwater treatment facility at issue.  On September 10, 2021, NJDEP issued a "Notice of Non-Compliance-Perfluorooctanoic Acid ("PFOA") MCL Exceeded" with respect to Defendant Middlesex Water's Park Avenue facility.

57.     Despite having received notice that the August 2, 2021 sample exceeded the PFOA maximum contaminant level by at least September 7 and having received the Notice of Non-Compliance on September 10, 2021, Middlesex Water waited over six weeks to inform residents in the affected communities, noted to be portions of Middlesex Water's service area served by the company's Park Avenue Treatment Plant in South Plainfield, Edison, Metuchen, Woodbridge, Clark and Rahway, New Jersey.  Middlesex Water's preemptive explanation for its delayed notification (that "[d]eveloping the notification language and audience, and obtaining NJDEP

approval takes time—as does printing and mailing"),[18] while the health and welfare of the communities it serves are at risk, belies belief.

58.     It further belies belief that Middlesex Water did not provide prior written notice to its customers of the contamination issues even though Middlesex Water was on notice of prior test results, and in fact, had even sued 3M over the contamination issues in late 2018.

59.     Finally, on October 22, 2021, Defendant Middlesex Water issued a notice to certain of its customers, including Plaintiff, entitled "IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER" and including the following subheading: "Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above Drinking Water Standards."  The October 22 Notice provided the following information:

> Our water system recently violated a New Jersey drinking water standard, and as our customers, you have a right to know what happened, what you should do, and what we are doing to correct this situation. We routinely monitor for the presence of federal and state regulated drinking water contaminants. New Jersey adopted a standard, or maximum contaminant level (MCL), for PFOA in 2020 and monitoring began in 2021. The MCL for PFOA is 14 parts per trillion (ppt) and is based on a running annual average (RAA), in which the four most recent quarters of monitoring data are averaged. On September 7, 2021, we received notice that the sample collected on August 2, 2021 showed that our system exceeds the PFOA MCL. PFOA was found at 36.1 ppt which caused the RAA to exceed the MCL regardless of the next quarter results.[19]

60.     The October 22 Notice explicitly acknowledged the dire health consequences of exposure to PFOA, noting that "[p]eople who drink water containing PFOA in excess of the MCL over time could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system."  Further, the Notice stated that drinking water containing PFOA in excess of the MCL over time "may also increase the risk of testicular and kidney cancer" and "may cause developmental delays in a fetus and/or an infant" with some

---

[18] Slideshow, previously available at https://online.flipbuilder.com/ucfo/bplh/.
[19] Exhibit A.

of the developmental effects persisting through childhood.  The Notice also acknowledged that boiling the affected water will not remove PFOA and suggested that residents use bottled water and/or a home water filter or home water treatment device certified to reduce levels of PFOA.[20] Of course, despite making this suggestion, Middlesex Water did not offer to cover the costs for any such bottled water, or home filtration or treatment systems.

61.     Conspicuously absent from the October 22 Notice was any reference to substantive remedial measures that Defendant Middlesex Water was taking to provide its customers with clean and safe water for immediate use.  Instead, under the heading, "What is being done?", the notice simply recites the monitoring and evaluation activities that Middlesex Water has undertaken over the last several years, including that Middlesex Water "has been monitoring the levels of PFAS compounds for a number of years," has been "reporting on PFOA detection in our Annual Consumer Confidence Report sent to you since 2008", and began evaluating treatment options in 2019.[21]

62.     Further, Middlesex Water noted that a new treatment plant which will remove PFOA is under construction, with an expected completion date some time in 2023.  In its customer slideshow, Middlesex Water also noted that it was making an initial estimated investment of approximately $47 million in upgrading treatment, upgrades that are expected to be in place by mid-2023.[22]

63.     None of these stated measures did anything to address the *immediate* needs and concerns of Plaintiff and Class members who were left without consumable water.  As Middlesex

---

[20] *Id*.
[21] *Id*.
[22] Slideshow, previously available at https://online.flipbuilder.com/ucfo/bplh/.

Water admitted in its slideshow, the current groundwater treatment facility was expected to exceed the MCL for PFOA until the new treatment program was installed.[23]

64.     The frustration of Class members was laid bare at a public presentation and question and answer session with Middlesex Water officials on October 25, 2021 at Colonia High School in Colonia, New Jersey.  Though company officials tried to downplay the threat and health risk of the PFOA exceedance, the residents from the affected municipalities of Woodbridge, Edison, Metuchen, and South Plainfield "didn't seem to agree."[24]

65.     The "packed house … was buzzing with questions from the mic and shouts from an angry crowd in attendance…[o]ne after another residents and [Middlesex] customers asked for the water company to provide water filters to its customers."  Other residents expressed concern about personal health care issues and wondered whether they were the result of the water contamination issues.  A number of attendees spoke of their life health experiences and asked if this was due to water contamination issues.  Middlesex Water demurred, offering only that they were spending $47 million to upgrade their treatment facility while acknowledging that the facility will not be operational until sometime in the future.[25]

66.     Remarkably, and despite that PFOA levels exceeded the maximum allowable for at least three quarters, Defendants still at that time failed to propose and implement meaningful and immediate remediation measures to resolve the water contamination issue.  Defendants failed to ensure that Plaintiff and Class members were provided with safe and clean water for their

---

[23] *Id*.
[24] Darlene Tedesco Cullen, *Anger Flows as Middlesex Water Tries to Calm Customers,* TapintoSouth Plainfield On-line, https://www.tapinto.net/towns/south-plainfield/sections/government/articles/anger-flows-as-middlesex-water-tries-to-calm-customers (last visited April 14, 2022).
[25] *Id*.

immediate and daily use, including without limitation, by apparently simple measures such as providing Plaintiff and Class members with a supply of bottled water and a home water filter or home water treatment device certified to reduce levels of PFOA, or reimbursing Class members for such expenses.

67. Only on November 9, 2021, over two months after Middlesex Water first received notice of the recent contamination issue, the company purportedly commenced the interim shut down of its Park Avenue facility.  Further, over a month later, on December 16, 2021, the company announced an "interim plan" to produce "additional water from its primary surface water treatment plant and other sources to enable the Company to turn off the wells which tested above state limits for the new PFOA standard."  A true and correct copy of Defendant Middlesex Water's December 16, 2021 Press Release ("December 16 Press Release") is attached hereto as Exhibit C.  According to the December 16 Press Release, "the [affected] wells have been shut down and the Company is currently replacing that water supply with alternate sources that comply with all state and federal drinking water standards."[26]  Further, the company indicated that the December 16 Press Release marked the first public announcement that the affected wells have been turned off.[27]  However, while Defendant Middlesex Water insisted that the affected wells had been shut down and that customers were no longer receiving water from that source, it cautioned that customers would receive another public notification in the coming weeks that the wells again tested above permitted PFOA levels due to the fact that the wells were still on during the earlier part of the fourth quarter of 2021.[28]

## IV.    Plaintiff's Allegations

---

[26] *See* Exhibit C.
[27] *Id.* ("We are now publicly announcing that the wells have been turned off.").
[28] *Id.*

68.     Plaintiff first learned of the water contamination issue when she read Defendant Middlesex Water's October 22 Notice on or about October 25, 2021.  Upon reading the notice, Plaintiff contacted Middlesex Water to inquire about the issue and see what the company was doing to address the problem. Once reached on the telephone, a representative of Middlesex Water told Plaintiff that the company was working to address the issue and trying to "reverse" the problem though the representative failed to indicate exactly what the company was doing to remediate the issue or how long any such remediation may take.  When Plaintiff continued to seek information from the company representative, Plaintiff was told that the problem was "really not that bad" and that Middlesex Water was currently constructing a new water treatment plant to address the removal of PFOA but that the facility would not be completed until 2023.  Plaintiff was not provided with any information with respect to how Middlesex Water or 3M would address the issue in the short term.

69.     Plaintiff disputes Middlesex Water's assessment that the problem was "not that bad."  In fact, the water contamination issue completely upended Plaintiff's and Class members' lives and prevented them from properly cleaning their homes, cooking, bathing, taking care of their pets (including Plaintiff's pet dog), and consuming safe and clean water.

70.     In light of Defendants' failure to remediate the problem in a timely manner, let alone provide any information or resources to assist Plaintiff and Class members, Plaintiff proactively ordered a $50 water cooler as well as a subscription to receive four large water receptacles monthly for $40 per month.  The water cooler and first shipment of water receptacles arrived at Plaintiff's home on Thursday, October 28, 2021, and Plaintiff and her family used the water to prepare food and coffee and provide drinking water to the household into late December 2021, after Defendant Middlesex Water announced that the affected wells had been shut down and

the company was replacing that water supply with alternate, and presumably safe, sources of drinking water.

71.      Though Plaintiff drank bottled water or water from her refrigerator's water filter prior to receiving notice of the water contamination issue, she has now increased her consumption of bottled water given that she believes that her water filter was polluted with PFOA.  In addition, extra bottled water was used by Plaintiff and her husband to brush their teeth.  Plaintiff also believes that the water in her clothes washer and dishwasher was impacted by the water contamination issue and that the clothes/dishes that are cleaned in them were contaminated. Plaintiff estimates that her family spent approximately $400 on the water cooler subscription service and excess bottled water between the receipt of the October 22 Notice and late December 2021, after Defendant Middlesex Water issued the December 16 Press Release.

72.      Further, though Plaintiff and her husband continued to use the shower in their home to bathe after receiving the October 22 Notice, they did so only to briefly rinse themselves, and Plaintiff supplemented her showers by using sanitizing liquid at additional out-of-pocket expense.

73.      Plaintiff was particularly concerned with her ability to properly bathe in the PFOA-contaminated water given that, in the weeks after she received the October 22 Notice, Plaintiff was preparing to have hip replacement surgery, which ultimately took place on November 10, 2021. Leading up to and following this procedure, the water contamination issue negatively impacted her ability to follow pre-surgery bathing and cleanliness protocol as well as a post-surgery protocol designed to avoid bacteria/infections.

## CLASS ACTION ALLEGATIONS

74.      This action is brought and may be properly maintained as a New Jersey class action pursuant to Fed. R. Civ. P. 23 on behalf of the following class:

> All New Jersey residents who are customers of Defendant Middlesex Water and who receive all or some of their drinking water from Middlesex Water's Park Avenue Treatment Plant (the "Class").

75.     Excluded from the Class are Defendants and Defendants' legal representatives, assigns and successors.

76.     Plaintiff reserves the right to redefine the Class prior to class certification.

77.     Members of the Class are so numerous that their individual joinder is impracticable. While the precise number of Class members is unknown at this time, the Class numbers in the tens of thousands.  The precise number of affected households is known by Middlesex Water and discoverable through its books and records.

78.     There are numerous questions of law and fact common to Plaintiff and the Class, that predominate over any questions that may affect individual Class members, including, but not limited to:

a)      whether the subject water was contaminated with PFOA and was not suitable for use and consumption by Class members;

b)      whether and when Defendants knew or should have known of the PFOA contamination;

c)      whether Defendants properly and timely provided notice and advised all affected consumers about the problems with the water;

d)      whether Defendant 3M owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the manufacture and distribution of PFOA;

e)      whether Defendant Middlesex Water owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the distribution of contaminated water to Plaintiff and the Class;

24

f)      whether Defendants owed Plaintiff and the Class a duty to promptly provide notice and remediate the contamination of the water and to provide clean and safe water, and otherwise prevent further risk of harm, to Plaintiff and the Class;

g)      whether Defendants breached their duties to Plaintiff and the Class;

h)      whether the subject water will continue to be polluted over time;

i)      whether Plaintiff and the Class are entitled to compensatory damages, and the amount of such damages; and

j)      whether Plaintiff and the Class are entitled to consequential and ancillary damages.

79.     Plaintiff's claim is typical of the claims of the Class members.  As a result of the contamination of the subject drinking water, Plaintiff and all Class members have suffered damages.

80.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions and environmental class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so.  Neither Plaintiff nor her counsel have any interests adverse or antagonistic to those of the Class.

81.     Plaintiff and the Class members have all suffered and will continue to suffer harm and damages as a result of Defendants' conduct as described herein.

82.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, the vast majority of Class members likely would not be in a position to litigate their claims individually and would have no effective remedy at law through which to vindicate their claims against Defendants and be made whole.  Class

treatment of predominating common questions of law and fact is also superior to multiple individual actions, in that class treatment would conserve the resources of the courts and the litigants and will further the efficient adjudication of Class members' claims.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE AGAINST DEFENDANT 3M

83.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

84.     Defendant 3M owes a duty to Plaintiff and the Class to exercise due and reasonable care in the manufacturing and distribution of its products, to prevent the discharge of toxic chemicals, including PFOA, into the water supply of Plaintiff and Class members, and to otherwise protect Plaintiff and the Class from the unnecessary risks of harm associated with PFOA exposure.

85.     Defendant 3M breached its duty owed to Plaintiff and the Class, to the extent it failed to prevent the emission of PFOA, which contaminated the drinking water of Plaintiff and the Class.  Defendant further breached its duty to Plaintiff and the Class when it failed to promptly remediate the contamination issues and failed to provide Plaintiff and the Class with safe and clean water for use in their daily lives.

86.     Defendant 3M knew or should have known that its manufacture and distribution of PFOA was likely to contaminate the local environment in New Jersey, including the drinking water of Plaintiff and the Class, was an immediate danger to the surrounding communities and property, including Plaintiff's property, and was likely to cause injury to Plaintiff and the Class.  Further, Defendant 3M knew or should have known that its failure to promptly and properly remediate the water contamination issues and to provide Plaintiff and the Class with bottled water and a home

water filter or home water treatment device certified to reduce levels of PFOA, would expose Plaintiff and the Class to an unnecessary risk of harm.

87.    Defendant 3M's breaches constitute negligent, willful, and/or reckless conduct.

88.    As a direct, proximate, and foreseeable result of Defendants' conduct, Plaintiff and Class members have been caused to suffer damages, including out-of-pocket expenses relating to the purchase of bottled water and a home water filter or home water treatment device certified to reduce levels of PFOA, other damages arising from the water contamination, and the need for prompt and expedited remediation of the contamination.

89.    Plaintiff and members of the proposed Class claim money damages in an amount that will fairly and reasonably compensate them for the harm caused by Defendant 3M.

<u>**COUNT II**</u>
<u>**NEGLIGENCE AGAINST DEFENDANT MIDDLESEX WATER**</u>

90.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

91.    Defendant Middlesex Water owed Plaintiff and the Class a duty to exercise reasonable care including a duty to act reasonably to contain and remediate the water contamination issue before it injured Plaintiff, the Class, and their property, and to act reasonably to minimize the damage to Plaintiff, the Class, and their property.

92.    Defendant Middlesex Water breached its duty to Plaintiff and the Class when it failed to promptly remediate the contamination issue and failed to promptly provide Plaintiff and the Class with safe and clean water for use in their daily lives.

93.    Further, Defendant Middlesex Water breached its duty of reasonable care by failing to timely notify Plaintiff and the Class of the contamination of their drinking water, allowing Plaintiff and the Class to be unnecessarily exposed to PFOAs in their drinking water.  As a result

of this breach, Plaintiff and the Class were forestalled from undertaking effective and immediate remedial measures, including seeking and securing alternative sources of clean and safe water for use in their daily lives.

94.     Defendant Middlesex Water knew or should have known that its failure to promptly and properly remediate the water contamination issue and to provide Plaintiff and the Class with bottled water and a home water filter or home water treatment device certified to reduce levels of PFOA would expose Plaintiff and the Class to an unnecessary risk of harm and cause Plaintiff and the Class to incur costs and expenses necessary to obtain safe and clean drinking water.

95.     Further, Defendant Middlesex Water knew or should have known that its failure to promptly notify Plaintiff and the Class of the water contamination issue would expose Plaintiff and the Class to an unnecessary risk of harm.

96.     Defendant Middlesex Water's breaches constitute negligent, willful and/or reckless conduct.

97.     As a direct, proximate, and foreseeable result of Defendant Middlesex Water's conduct, Plaintiff and Class members have been caused to suffer, and will continue to suffer, damages, including expenses relating to the purchase of bottled water and a home water filter or home water treatment device certified to reduce levels of PFOA, other damages arising from the water contamination, and the need for remediation of the contamination.

98.     Plaintiff and the Class reserve their right to seek all damages available by statute or law.

## COUNT III
## NUISANCE AGAINST DEFENDANT 3M

99.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

100.    Defendant 3M's actions in manufacturing and distributing PFOA in New Jersey caused PFOA-contaminated water to be delivered to the homes of Plaintiff and the Class and resulted in the presence of contaminants on the properties and/or persons of Plaintiff and the Class.

101.    Defendant 3M's actions substantially and unreasonably interfered with Plaintiff's and the Class's lives and their ability to use and enjoy their homes and other properties, thereby constituting a nuisance.

102.    Plaintiff and the Class have property rights and privileges with respect to the use and enjoyment of their property.  The water contamination caused an invasion of Plaintiff's and the Class's interest in the private use and enjoyment of their land. Further, the invasion resulted in significant harm and Defendant 3M's conduct in causing the emission of PFOA is the legal cause of the invasion. The invasion was either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct.

103.    Plaintiff and Class members did not consent for PFOA contaminated water to physically invade their persons or property.

104.    Plaintiff suffered injuries and damage as a direct and proximate result of Defendant 3M's actions in causing PFOA-contaminated water to be delivered to their homes.

105.    Defendant 3M's actions in causing a substantial and unreasonable interference with Plaintiff's ability to use and enjoy their properties constitutes a nuisance and Defendant 3M is liable for all damages arising from such nuisance, including compensatory and exemplary relief.

106.    In addition, the water contamination constitutes a nuisance to the extent it unreasonably interfered with public health and safety and posed a wrongful, continuing, impending danger to the lives and health of the public.  The contamination resulted from Defendant 3M's

neglect and disregard of their obligations under New Jersey law.  Defendant 3M knew or should have known that the contamination was of a continuing nature that produces a permanent or long-lasting, significant effect on the common rights enjoyed by the general public.

107.    As a direct and proximate result of the nuisance created by Defendant 3M, Plaintiff and the Class have suffered damages and have been placed at a substantially increased risk of harm as a result of being exposed to the PFOA-contaminated water.

**COUNT IV**
**TRESPASS AGAINST DEFENDANT 3M**

108.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

109.    Defendant 3M's negligent manufacturing and distribution of PFAS and related chemicals has caused a PFOA-contaminated water supply to enter onto the properties of Plaintiff and Class members without their permission, constituting an invasion by foreign substance and an unauthorized trespass.

110.    Defendant 3M, knowingly or in circumstances under which it should have known, engaged in deliberate actions and/or omissions in manufacturing and distributing PFAS, including PFOA, which contaminated water that invaded the properties of Plaintiff and the Class.

111.    Defendant 3M knew or should have known of the likelihood that its negligent production and distribution of PFOA would cause PFOA-contaminated water to invade the properties of Plaintiff and the Class and cause damage to their properties.

112.    Defendant 3M's actions were done with actual malice or wanton, reckless or willful disregard for the safety, rights, and/or property of Plaintiff and the Class.

113.    Plaintiff and the Class did not consent for the contaminated water released as a result of Defendant 3M's negligence to physically invade their homes and other properties.

114.     As a direct and proximate result of Defendant 3M's actions and/or omissions, Plaintiff and the Class have been caused to suffer damages, including expenses relating to the purchase of bottled water and a home water filter or home water treatment device certified to reduce levels of PFOA, other damages arising from the water contamination, and the need for prompt remediation of the contamination. Plaintiff and the Class seek damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, respectfully request that the Court grant the following relief:

A.     Enter an Order certifying the Class, appointing Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel;

B.     Enter an award to Plaintiff and the Class that includes all actual, compensatory, consequential, ancillary, statutory, exemplary, punitive, or other damages as allowed by New Jersey law or other law, and statutory damages and penalties, including interest thereon, in an amount to be proven at trial;

C.     Enter an injunctive order to provide for the reimbursement of all out-of-pocket expenses and economic damages incurred by Plaintiff and Class members relating to the water contamination issue;

D.     Award pre-judgment and post-judgment interest at the maximum rate allowable by law;

E.     Award reasonable attorneys' fees and reimbursement of costs incurred by Plaintiff and her counsel in connection with this action; and

      F.      Award such other and further injunctive relief and damages as the Court deems just

and proper.

**JURY DEMAND**

      Plaintiff, on behalf of herself and the Class, hereby demands trial by jury on all issues so

triable.

Dated: April 15, 2022               _s/__Amey J. Park_____
                                         Amey J. Park (NJ Bar No. 070422014)
                                         Shanon J. Carson (*pro hac vice*)
                                         Y. Michael Twersky
                                         Jeffrey L. Osterwise
                                         J. Quinn Kerrigan
                                         **BERGER MONTAGUE PC**
                                         1818 Market Street,
                                         Suite 3600
                                         Philadelphia, PA 19103
                                         Tel: (267) 831-4701
                                         Email : apark@bm.net
                                         Email: scarson@bm.net
                                         Email : mitwersky@bm.net
                                         Email : josterwise@bm.net
                                         Email: jkerrigan@bm.net

                                         John G. Albanese (*pro hac vice* forthcoming)
                                         **BERGER MONTAGUE PC**
                                         1229 Tyler Street NE
                                         Suite 205
                                         Minneapolis, MN 55413
                                         Tel: (612) 594-5997
                                         Email: jalbanese@bm.net

                                         ***Counsel for Plaintiff and the Proposed Class***