NOT FOR PUBLICATION

# UNITED  STATES  DISTRICT  COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBERTA LONSK, on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>MIDDLESEX WATER COMPANY AND 3M COMPANY,<br><br>          Defendants. | Case No. 21cv19808 (EP) (ESK)<br><br>**OPINION** |

**PADIN, District Judge.**

   This case concerns claims brought by Plaintiff Roberta Lonsk ("Lonsk"), filed on behalf of a putative class, concerning water contamination.  Defendant Middlesex Water Company's ("MWC") moves to dismiss "Count II – Negligence" of the First Amended Complaint ("FAC"), D.E. 43-4, pursuant to Fed. R. Civ. P. 12(b)(6).  Separately, but also with respect to the FAC, Defendant 3M Company ("3M") moves to dismiss "Count I – Negligence," "Count III – Nuisance," and "Count IV – Trespass," D.E. 44-1, pursuant to Fed. R. Civ. P. 12(b)(6).  The Court decides this matter on the papers pursuant to Fed. R. Civ. P. 78 and L.Civ.R.78.1(b).  For the reasons expressed below, the motions will be **DENIED**.

I.        **BACKGROUND**[1]

Per- and polyfluoralkyl substances ("PFAS") are manmade chemicals that have been manufactured and used in the United States since at least the 1940s.  FAC ¶ 24.  "They have long been used in a wide variety of industrial and commercial processes and products, such as stain repellants, paper coatings, and coatings for textiles such as fabrics, upholstery, and carpeting." D.E. 40-2.  PFAS are very persistent in the environment and in humans in the United States as they are extremely resistant to degradation due to the water solubility of their bonds, are able to migrate (*e.g.*, from soil to groundwater), are not easily removed from the environment, and typical water treatments are unable to filter or treat PFAS.  *See* FAC ¶¶ 24-25.  Health effects of concern due to PFAS exposure include impacts on the liver damage, thyroid disease, decreased fertility, high cholesterol, obesity, hormone suppression, cancer, decreased antibody response to vaccinations, decreased birth weight, and decreased immune responses.  *Id.* ¶¶ 26-27, 29.

One type of PFAS is perfluooctanic acid ("PFOA"), which is used to make fluoropolymer coatings and products that resist, heat, oil, stains, grease, and water.  *Id.* ¶ 28.  Like other PFAS, PFOA is very persistent and carries health risks with exposure.  *Id.* ¶¶ 28- 29.  3M has mass-manufactured PFAS, including PFOA, since 1947, despite the company's increasing knowledge of the persistence and health risks associated with these chemicals for decades.  *See id.* ¶¶ 31-40. For example: in the 1950s, 3M learned that PFAS bioaccumulate in blood; in the 1960s, 3M linked PFOA exposure to liver damage and deemed PFAS "toxic" in a 3M technical manual; in the 1970s, 3M confirmed the toxicity of PFOA and learned that a noteworthy number of 3M employees had PFOA in their blood; in the 1980s, 3M learned that PFAS may damage the eyes of developing fetuses and found elevated cancer rates among its PFAS workers; in the 1990s, 3M studies further

---

[1] The facts in this section are taken from the allegations in the FAC, which the Court presumes to be true for purposes of resolving the instant motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

tied PFOA to cancer and notified the Environmental Protection Agency ("EPA") that PFAS bioaccumulates in blood. *Id.* ¶¶ 32-36. On May 16, 2000, 3M announced that it would phase out its production of PFOA. *Id.* ¶ 37.

The New Jersey Department of Public Environmental Protection ("NJDEP") has identified 3M as the "dominant global producer of PFOA" responsible for manufacturing at least 85% of PFOA globally. *Id.* ¶ 41. NJDEP has also attributed responsibility for PFOA discharge in New Jersey to 3M as a result of the company's distribution of the chemical to other companies operating in the state. *Id.* ¶ 41. For example, 3M distributed PFOA to DuPont, a New Jersey-based company, for use in its manufacturing processes until at least the early 2000s, and DuPont discharged this PFOA in New Jersey, which in turn, resulted in the contamination of New Jersey's environment. *Id.* ¶ 42. Finally, NJDEP has found that 3M knew of detrimental impacts of PFAS in New Jersey for decades. *Id.* ¶ 43.

In a separate action brought against 3M, MWC alleges that PFOA manufactured and distributed by 3M in New Jersey ended up in MWC's Park Avenue Water Treatment Plant ("Park Avenue Wells"), and that as a result, the drinking water MWC provided to its customers from those wells also contained PFOA. *Id.* ¶¶ 49-53.

Now, Lonsk brings this action on behalf of a class of New Jersey citizens who are customers of MWC and who received all or some of their drinking water from MWC's Park Avenue Wells (collectively, the "Class"). *Id.* ¶ 74.

On October 22, 2021, MWC sent the Class a notice titled "**IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER**." D.E. 40-1. In relevant part, the notice informed the Class:

**Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above Drinking Water Standards**

Our water system recently violated a New Jersey drinking water standard, and as our customers, you have a right to know what happened, what you should do, and what we are doing to correct this situation.

We routinely monitor for the presence of federal and state regulated drinking water contaminants. New Jersey adopted a standard, or maximum contaminant level (MCL), for PFOA in 2020 and monitoring began in 2021. The MCL for PFOA is 14 parts per trillion (ppt) and is based on a running annual average (RAA), in which the four most recent quarters of monitoring data are averaged. On September 7, 2021, we received notice that the sample collected on August 2, 2021 showed that our system exceeds the PFOA MCL. PFOA was found at 36.1 ppt which caused the RAA to exceed the MCL regardless of the next quarter results.

*Id.*

The October Notice also provided information on what this information meant, what actions the Class should take, and what actions MWC was taking, including:

**What does this mean?**

*\*People who drink water containing PFOA in excess of the MCL over time could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system. Drinking water containing PFOA in excess of the MCL over time may also increase the risk of testicular and kidney cancer. For females, drinking water containing PFOA in excess of the MCL over time may cause developmental delays in a fetus and/or an infant. Some of these developmental effects may persist through childhood.*

**What should [the Class] do?**

• If you have specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly, you may be at higher risk than other individuals and should seek advice from your health care providers about drinking this water.
• The New Jersey Department of Health advises that infant formula and other beverages for infants, such as juice, should be prepared with bottled water when PFOA is elevated in drinking water.
• Pregnant, nursing, and women considering having children may choose to use bottled water for drinking and cooking to reduce exposure to PFOA.
• Other people may also choose to use bottled water for drinking and cooking to reduce exposure to PFOA or a home water filter that is certified to reduce levels of PFOA. Home water treatment

4

devices are available that can reduce levels of PFOA. For more specific information regarding the effectiveness of home water filters for reducing PFOA, visit the National Sanitation Foundation (NSF) International website, http://www.nsf.org/.
• Boiling your water will not remove PFOA.

**What is being done [by MWC]?**

Middlesex Water Company has been monitoring the levels of PFAS compounds for a number of years. We have been reporting on PFOA detection in our Annual Consumer Confidence Report sent to you since 2008. In anticipation of New Jersey regulatory standards, we began evaluating treatment options in 2019. Design of a new treatment plant which will remove additional compounds, including PFOA, was completed and is under construction. The new treatment plant is expected to be in service in 2023. Only a portion of our service area, served by the Company's Park Avenue Treatment Plant is affected by this public notice. This notice is being distributed to only those customers who, according to our records, may at times, receive all or some of their water from that facility. The impacted municipalities are South Plainfield, Edison, Metuchen, Woodbridge, Clark and Rahway. Some portions of these municipalities may be affected, please see the map illustrating the affected area on our website at https://www.middlesexwater.com/water-quality/
For more information, please contact our Customer Service Department at 800-549-3802.

*Id.*

The Class brings one claim against MWC: negligence. [2]  The Class alleges that MWC caused them harm by negligently supplying them with PFOA-contaminated water from the Park Avenue Wells. *See* FAC ¶¶ 1, 6-11, 14-18, 55-67.  While the Class acknowledges that MWC did not manufacture nor knowingly contaminate the water in the Park Avenue Wells, the Class claims that MWC acted negligently in failing to: promptly remediate the PFOA contamination; promptly notify the Class about the contamination; and provide the Class with safe and clean water.  *See id.* ¶¶ 91-93.  Specifically, the Class claims: on September 7, 2021, MWC learned that an August 2, 2021 Park Avenue Wells' water sample revealed that the water contained 36.1 ppt of PFOA; on

---

[2] "Count II – Negligence" of the FAC.  *See* FAC ¶¶ 90-98.

September 10, 2021, NJDEP issued a notice of non-compliance with the 14 ppt MCL for PFOA to MWC; on October 22, 2021, six weeks after learning that the Park Avenue Wells had elevated levels of PFOA, MWC notified the Class of the contamination; on October 25, 2021, MWC held a presentation at a local high school, where the public could ask questions about the PFOA contamination; on November 9, 2021, MWC shutdown the Park Avenue Wells; and on December 16, 2021, MWC issued a press release publicly announcing the shutdown and the company's long-term remediation plans. *See id.* ¶¶ 56-67. The Class adds that MWC knew that the Park Avenue Wells contained PFOA, in as early as December 2013, when the company first conducted sampling. *Id.* ¶ 52.

The Class also brings three claims against 3M: negligence,[3] nuisance,[4] and trespass.[5] The basis of the Class's claims against 3M boil down to the Class's allegations that 3M caused them harm by negligently manufacturing and distributing its PFOA-containing products, failing to prevent the discharge of PFOA into the Park Avenue Wells.

The primary differences between MWC's complained of conduct and that of 3M can be summed up as follows: 3M manufactured and distributed PFOA in New Jersey, despite knowledge of the risks that exposure posed to New Jersey citizens, and as a result, the Park Avenue Wells became contaminated, such that the water that the Class received was contaminated; whereas, MWC negligently provided water to the Class, which was contaminated by 3M's PFOA, and also negligently failed to contain and remediate the contamination.

Separately, MWC and 3M now move to dismiss the claims relevant to each of them in the FAC. Both motions are now fully-briefed and ripe for the Court's decision.

---

[3] "Count I – Negligence" of the FAC. *See id.* ¶¶ 83-89.
[4] "Count III – Nuisance" of the FAC. *See id.* ¶¶ 99-107.
[5] "Count IV – Trespass" of the FAC. *See id.* ¶¶ 108-114.

## II.      STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted).  Under this standard, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  A reviewing court is not to give credit to a complaint's "bald assertions" or "legal conclusions." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997).  In weighing a motion to dismiss, a court asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 556 U.S. at 684.

## III.      DISCUSSION

### A.      MWC's Motion to Dismiss

### *1.      Count II – Negligence is adequately pled*

The Court first addresses whether the Class has stated a claim for negligence against MWC. Under New Jersey law, a plaintiff asserting a negligence claim must establish four elements: (1) duty of care; (2) breach of duty; (3) proximate cause; and (4) actual damages.  *See, e.g.*, *Stanley Co. of Am. v. Hercules Powder Co.*, 16 N.J. 295, 108 A.2d 616 (1954); *see also Prosser and Keeton on the Law of Torts*, § 30, at 164-65 (5th ed. 1984).

Here, the Class alleges that MWC owed them a duty to reasonably contain and remediate the PFOA-contamination of the Park Avenue Wells before the contamination injured the Class and their property, as well as a duty to mitigate the injury once the contamination had already occurred. FAC ¶ 91.  The Class further alleges that MWC breached that duty by failing to promptly remediate the contamination, not providing the Class with safe and clean water, and by not timely notifying the Class of the contamination.  *Id.* ¶¶ 92-93.  Additionally, the Class alleges that MWC knew or should have known that these failures would injure the Class.  *Id.* ¶¶ 94-95.  Specifically, the Class alleges that as a result of MWC's failures, they were unnecessarily exposed to PFOA-contaminated water to their peril and incurred costs to obtain water from alternative sources.  *Id.* ¶ 97.

The Court notes that, in its opening brief, MWC does not even make a legitimate attempt to substantiate its assertions.  MWC does not even spend two pages to support its motion to dismiss.  The Court reiterates here that, in reviewing a motion to dismiss, it accepts all factual assertions made in the complaint as true, construes the complaint in the light most favorable to the plaintiff, and determines whether any reasonable reading of the complaint would entitle the plaintiff to relief.  *Phillips*, 515 F.3d at 233.  Thus, the Court will not read between the lines of MWC's barebones motion to find in the company's favor.

MWC raises three haphazard assertions to defeat the Class's negligence claim: (1) the Class has not plausibly alleged the existence of a duty of care; (2) the Class has not plausibly alleged a breach of duty; and (3) the Class has not plausibly pled proximate cause.  D.E. 43-4 "MWC Mot." at 9-10.  Specifically, MWC contends that the Class has not indicated what action or inaction on MWC's part resulted in the Class's injuries nor that the Class's injuries were a foreseeable result of MWC's actions where MWC did not cause the PFOA water contamination.  Mot. at 10.

The Court finds MWC's assertions unpersuasive.  The Class has sufficiently pled the elements necessary for a negligence claim at this stage.  Specifically, the Class plausibly alleges, and the Court accepts as true at this stage: MWC had a duty to the Class, which consists of MWC's own customers with whom the company had a direct relationship, to act reasonably in providing water to the Class; MWC breached that duty by providing PFOA-contaminated water, failing to promptly notify the Class of the contamination, and failing to promptly remediate the contamination; MWC could have reasonably foreseen that its breach would cause injury to the Class by way of exposing them to PFOA-contaminated water; and the Class, was in fact, exposed to the PFOA-contaminated water and incurred costs to obtain water from alternative water sources after learning that their water was contaminated.  *See* FAC ¶¶ 90-98.

Additionally, the FAC contains factual details further supporting the allegations made against MWC.  For example, the Class alleges that MWC learned that the water in the Park Avenue Wells was above NJDEP's MCL for PFOA as early as September 7, 2021, yet the Class was not notified of this until October 22, 2021.  *See id.* ¶¶ 56-58.  This makes it at least plausible that MWC could have reasonably foreseen that it was providing PFOA-contaminated water to unsuspecting customers for at least 45 days.  Consequently, that the Class alleges they were harmed by MWC's negligent conduct is not implausible.

Accordingly, the Court declines to dismiss the Class's negligence claim against MWC.

**B.      3M's Motion to Dismiss**

*1.      Causation is adequately pled with respect to Count I – Negligence, Count III – Nuisance, and Count IV – Trespass*

Broadly, with respect to the Class's negligence, nuisance, and trespass claims, 3M asserts that the Class has not adequately pled a causal connection between 3M's alleged upstream manufacture of PFOA and the presence of PFOA in the Park Avenue Wells. D.E. 44-1 "3M Mot."

at 8.  Specifically, 3M asserts: the FAC does not specify how PFOA ended up in a MWC water sample; and an out-of-state chemical manufacturer cannot be considered the cause of local contamination because a type of chemical that it manufactures was allegedly used or discharged by others somewhere in the state.  *Id.* at 8, 10-11.

The Class convincingly rebuts that they have adequately pled a causal connection by providing the following support: 3M was responsible for the majority of PFOA-manufacturing globally, FAC ¶¶ 41, 50; 3M caused PFOA to be discharged in New Jersey when it supplied the chemical to companies operating in New Jersey, including DuPont, that released it into the state's environment, despite 3M's knowledge that its PFAS would not easily degrade, had the potential to accumulate over time, and could leach into groundwater and contaminate New Jersey's environment, *id.* ¶¶ 31, 41-43; 3M directly, continuously, and systematically sold products containing PFOA to hundreds of companies in New Jersey, which resulted in PFOA being released into the environment and waterways of New Jersey, including the Class's source of water, *id.* ¶¶ 50-52; and 3M's manufacture and distribution of PFOA directly led to the Class's water contamination because MWC's water samples from the Park Avenue Wells found that at least seventeen wells had PFOS and/or PFOA levels above the amount permitted by NJDEP's MCLs, MWC found that twelve to nineteen percent of the total PFOA found in MWC's water samples was "likely branched PFOA which his suggestive that 3M is the source of the PFOA[,]" and MWC's water samples contained other chemicals that are known to be manufactured by 3M, *id.* ¶ 53.

The Court concludes that the Class has adequately pled causation with respect to the negligence, nuisance, and trespass claims brought against 3M.  First, the Class's pleading is adequate on its face.  As the Class mentions in rebuttal, the FAC is not sparse and logically ties

3M's PFOA to the contamination of the Class's water.  The Class clearly outlines the extent of 3M's manufacturing of PFOA, globally and in New Jersey, 3M's knowledge of the persistence of PFOA once released into the environment, and that it is at least reasonable that the PFOA in the Class's water was manufactured by 3M because of, *inter alia*, the composition of the PFOA. Taken together, these allegations plausibly demonstrate that 3M could have foreseen that they would contaminate the Class's water with their PFOA.  This is sufficient to plead causation.

Furthermore, discovery has not taken place yet.  *See Bond v. Solvay Specialty Polymers, USA, LLC*, 583 F. Supp. 3d 643, 652 (D.N.J. 2022) (quoting *Broadus v. Prison Health Servs.*, 2016 U.S. Dist. LEXIS 118275, 2016 WL 4558331, at *3 (W.D. Pa. Sept. 1, 2016), "a claim should not be dismissed under Rule 12(b)(6) at the pleading stage if the complaint sets forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements."). Here, discovery is imperative to determining whether causation exists because practically the party with information relevant to determining if and whether the PFOA in the Class's water was manufactured and distributed by 3M is 3M, not the Class.  *See id.* (agreeing with the plaintiff that, at the pleading stage, defendants "might well have more information in their possession regarding how far their toxins spread and by what mechanism, information, by virtue of the lapse of time and lack of resources, each individual plaintiff would not be privy to."); *see also Top v. Ocean Petroleum, LLC*, 2010 U.S. Dist. LEXIS, 78090, 2010 WL 3087385, at *4 (D.N.J. Aug. 3, 2010) ("[F]ar from requiring that a plaintiff be in possession of the relevant evidence in order to plead a claim, a plaintiff need only have some good reasons – even if circumstantial and inferential – for believing that the defendant has engaged in some identifiable legal wrong, sufficient to convince the Court of the claim's plausibility in light of the other possible scenarios that are consistent with

the facts alleged.").  Thus, the Court finds that the Class has plausibly alleged causation with the information they had available to them.

Accordingly, the Court concludes that the Class has adequately pled causation with respect to the negligence, nuisance, and trespass claims brought against 3M.

## 2.    *Count I – Negligence is adequately pled*

The Court now addresses whether the Class has stated a claim for negligence against 3M. Under New Jersey law, a plaintiff asserting a negligence claim must establish four elements: (1) duty of care; (2) breach of duty; (3) proximate cause; and (4) actual damages.  *See, e.g.*, *Stanley Co. of Am. v. Hercules Powder Co.*, 16 N.J. 295, 108 A.2d 616 (1954); *see also Prosser and Keeton on the Law of Torts*, § 30, at 164-65 (5th ed. 1984).  The Court rejected 3M's contention that the Class has not adequately pled causation in the preceding section, *supra Section III.B.1*.  Although 3M assumes that it owed a duty to the Class for purposes of its motion, 3M asserts that the Class has not adequately pled a breach of duty.  3M Mot. at 15.

Here, the Class alleges that 3M owed them a duty "to exercise due and reasonable care in the manufacturing and distribution of its products, to prevent the discharge of toxic chemicals, including PFOA, into [their] water supply, and to otherwise protect [them] from the unnecessary risks of harm associated with PFOA exposure."  FAC ¶ 85.  Just as 3M assumes that it owes a duty to the Class for the purposes of this motion, so will the Court.  The Class further alleges that 3M breached its duty by failing to prevent the emission of PFOA, and later its remediation, by continuing to manufacture and distribute PFOA, in significant volumes, for decades, including in New Jersey, while concealing and failing to share its knowledge of the dangers of PFOA.  *Id.* ¶¶ 31, 39-40, 85.

3M argues that the Class has not adequately pled a breach of duty because the FAC does not make any specific and credible allegations of any failure by 3M in the manufacturing and distribution of PFOA that led to the alleged contamination.  3M Mot. at 15-16.  The Court disagrees.  The Class does not assume 3M breached its duty because the Park Avenue Wells contained PFOA, but rather, the Class plausibly alleges that 3M had the relevant knowledge to prevent that contamination because 3M knew of the dangers of PFOA, yet despite this knowledge, 3M continued to manufacture and distribute PFOA in significant volumes, including in New Jersey.  Additionally, even if 3M did not learn about the extent of the dangers of PFOA until after it first started manufacturing and distributing PFOA, 3M did not stop this activity for decades, it did not share its knowledge, nor did it attempt to discover or remediate PFOA-contaminated water that it was possibly responsible.  With this context, the Court is inclined to conclude that the Class has plausibly alleged a breach of duty by 3M.

Next, 3M contends that the Class has not plausibly alleged a breach of duty because they have not identified any specific product for which 3M allegedly provided inadequate or no warning.  D.E. 52 "3M Reply" at 9.  3M conflates the Class's negligence claim with a failure to warn claim, which the Class does not bring here.  *See Smith v. Covidien LP*, 2019 U.S. Dist. LEXIS 223372, at *18-19 (D.N.J. Dec. 31, 2019) (outlining that a plaintiff bringing a failure to warn claim must demonstrate that the defendant had "a duty to warn about any risk relating to the product that it knows or ought to know," and that "an adequate warning was not provided.").  Here, the Class brings a negligence, not a failure to warn, claim alleging that 3M breached its duty by failing to prevent the emission of PFOA, and, later, failing to remediate that emission.  Thus, the Court does not find merit in 3M's contention.

Finally, 3M makes an attempt to improperly heighten the pleading standard to that required for a fraud claim. Specifically, 3M asserts that the Class has not alleged "when, where, or how the alleged contamination occurred." *See* 3M Reply at 9-10. The Court plainly rejects this argument because the Class does not bring any fraud claims, and as such it is not required to satisfy the heightened pleading standard required for fraud claims. *Compare Garfield v. Shutterfly, Inc.*, 857 F. App'x 71, 80-81 (explaining that Fed. R. Civ. P. 9(b) requires a heightened pleading standard in a fraud claim, such that a plaintiff must specify "the who, what, where, and how" to plausibly plead his claim), *with Turner v. J.P. Morgan Chase & Co.*, 2015 U.S. Dist. LEXIS 185621, at*5-6 (D.N.J. Jan. 22, 2015) (providing that a plaintiff need only satisfy the pleading standards of Fed. R. Civ. P. 8(a), *Twombly*, and *Iqbal* to state negligence claim).

Accordingly, the Class has plausibly alleged a negligence claim against 3M.

### 3.    *Count III – Nuisance is adequately pled*

Next, the Court must address whether the Class has stated a claim for nuisance against 3M. New Jersey law recognizes two types of nuisance: private and public. The FAC does not distinguish which type of nuisance is being alleged. The Court will determine whether the Class has sufficiently pled either.

Under New Jersey law, a private nuisance consists of an unreasonable interference with the use and enjoyment of land. *Sans v. Ramsey Golf and Country Club, Inc.*, 29 N.J. 438, 448, 149 A.2d 599 (1959). A plaintiff asserting a private nuisance claim must establish two elements: (1) unreasonable use by the defendant; and (2) significant harm to the plaintiff. *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 459 (D.N.J. 2009). To satisfy the first element, a plaintiff must demonstrate that "there has been an unreasonable, unwarranted or unlawful use by a person of his real property which is resulting in a material annoyance, inconvenience or hurt."

*Cherry Hill Twp. v. N.J. Racing Comm.*, 131 N.J. Super. 125, 328 A.2d 653 (Law Div. 1974), *aff'd* 131 N.J. Super. 482, 330 A.2d 600 (App. Div. 1974).  To satisfy the second element, a plaintiff must demonstrate that he suffered "significant harm," such that "normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable[.]"  Restatement (Second) of Torts, § 821F, cmt. d.

Under New Jersey law, a public nuisance consists of an unreasonable interference with the exercise of a right common to the general public.  *Mayor & Council of Borough of Alpine v. Brewster*, 7 N.J. 42, 50, 80 A.2d 297 (1951).  A plaintiff asserting a public nuisance claim must establish two elements: (1) unreasonable interference by the defendant; and (2) a right common to the general public.  *Rowe*, 262 F.R.D. at 462.

The scope of a public nuisance claim is limited.  First, the types of circumstances that may sustain a holding that an interference with a public right is unreasonable are not many, but conduct involving a "significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience" will suffice.  *In re Lead Paint Litigation*, 191 N.J. 405, 924 A.2d 484, 496 (N.J. 2007) (quoting Restatement (Second) of Torts, § 821B (1979)).  Second, for a plaintiff to recover damages for a public nuisance claim, it must also establish that it suffered a "special injury."  *Mayor & Council of Borough of Alpine v. Klockner & Klockner*, 811 F. Supp. 1039, 1056 (D.N.J. 1993).  A "special injury" is one where the "harm [suffered is] of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of the interference."  *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 315 (3d Cir. 1985) (quoting Restatement (Second) of Torts, § 821C(1)), *cert. denied*, 474 U.S. 980 (1985); *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 221 (3d Cir. 2020) ("[T]o sustain a private claim on a public nuisance theory, a plaintiff must have suffered a harm of a

greater magnitude and of a different kind than that which the general public suffered.") (citation and quotation marks omitted).

At bottom, the FAC alleges that 3M's manufacture and distribution of PFOA-containing products in New Jersey caused PFOA-contaminated water to be delivered to their properties, which resulted in the contamination of their properties and/or persons.  FAC ¶ 100.  According to the Class, 3M's actions constitute a nuisance as these actions have substantially and unreasonably interfered with the Class's lives and ability to use and enjoy their properties.  *Id.* ¶ 101.  And that the contamination was either intentional and unreasonable or intentional and otherwise actionable as negligent, reckless, or ultrahazardous conduct.  *Id.* ¶ 102.

3M raises four arguments in favor of dismissing the Class's nuisance claim.  First, with respect to whether the Class has alleged a private nuisance claim, 3M contends that the Class does not plausibly plead tortious use of their properties by 3M.  3M Mot. at 18.  Specifically, 3M attempts to limit the scope of what constitutes an unreasonable interference necessary for upholding a private nuisance claim to situations where "one person's property use interferes with another's use of neighboring or adjoining property."  *See id.* (quoting *Klockner & Klockner*, 811 F. Supp. at 1057-58).  The Class responds that courts have already foreclosed 3M's position.  D.E. 40 "Opp'n to 3M" at 26-27.

The Court finds the Class's case law examples persuasive.  For example, the Class finds support in *Rowe*, where the district court concluded that "[w]hile the plaintiff's land must be near the nuisance such that the nuisance actually affects his enjoyment of land, it need not be immediately contiguous," 262 F.R.D. at 459-60.  The Class also finds support in *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 379 F. Supp. 2d 348, 423 (S.D.N.Y. 2005), where the court acknowledged that the New Jersey Supreme Court "has recognized that the pollution of

a watercourse may constitute an actionable nuisance even where the polluted property does not neighbor or adjoin the plaintiffs' property."  The Court adds that in *Smith v. Honeywell Int'l Inc.*, 2011 U.S. Dist. LEXIS 20331, 2011 WL 810065, at *4 (D.N.J. Feb. 28, 2011), the district court allowed the plaintiffs' private nuisance claim to proceed on behalf of a class of New Jersey residents, where not all of the properties affected by the nuisance were directly next to the property causing the nuisance.  The Court agrees with the Class and, thus, concludes that the Class has sufficiently pled tortious use by 3M.

Second, with respect to whether the Class has alleged a private or public nuisance claim, 3M contends that 3M did not have control of the nuisance-causing activity.  3M Mot. at 20.  Specifically, 3M claims it did not create or control the physical conditions that introduced PFOA into MWC's water supply.  *Id.* at 21-22.  The Class responds that 3M did have a tangible role in creating and carrying out the nuisance-causing activity because it manufactured and distributed PFOA to New Jersey.  Opp'n to 3M at 28.

The Court agrees with the Class.  In *In re Lead Paint Litigation*, 191 N.J. 405, 924 A.2d 484, 501-03 (2007), the plaintiffs argued that the defendants had sufficient control over the nuisance-causing activity because they manufactured and distributed lead-containing paint that ended up in the plaintiffs homes.  The court found that the plaintiffs' conduct created the ingestion hazard[6] and, thus, declined to find that the defendants had exercised sufficient control to uphold the plaintiffs' nuisance claim.  *Id.*  Here, there is no indication that the Class's conduct or any third-party's conduct in handling the PFOA led to the PFOA-contamination on the Class's properties.  Rather, as the Class has plausibly pled, it is 3M's conduct in manufacturing and distributing of the

---

[6] Flaking, peeling, and dust from the paint.

PFOA itself that caused the complained of PFOA-contamination.  Thus, the Court concludes that the Class has plausibly pled that 3M had control over the nuisance-causing activity.

Third, with respect to whether the Class has alleged a private or public nuisance claim, 3M contends that the Class does not plausibly plead that 3M had the requisite mental state.  3M Mot. at 22.  Specifically, 3M claims that the Class has not alleged facts "showing that 3M acted intentionally or recklessly with respect to the manufacture and sale of PFOA, or that 3M undertook any abnormally dangerous activity."  *Id.*  The Class responds that the FAC is replete with examples that 3M acted with the requisite mental state, including that despite 3M's decades-long knowledge of the dangers associated with PFOA that the company continued to manufacture and distribute PFOA, including in New Jersey.  Opp'n to 3M at 30-31.

The Court agrees with the Class.  The Restatement (Second) of Torts, § 822, provides that a defendant's requisite mental state for upholding a nuisance claim is that the invasion of another's interest in the private use and enjoyment of his land be either "intentional and unreasonable" or "unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities."  At a minimum, the Class has sufficiently pled that 3M's actions resulted in the negligent invasion of their properties by PFOA-contaminated water.  Because 3M knew of the dangers associated with PFOA since the 1950s, the Court will not presume that 3M's mass-manufacture and distribution, including in New Jersey, of PFOA-containing products "accidentally" contaminated the Class's water, which, in turn, plausibly interfered with the use of and enjoyment of their properties.  *See Sines v. Darling Ingredients Inc.*, 2020 U.S. Dist. LEXIS 153856, at *10-11 (D.N.J. Aug. 25, 2020) (finding that plaintiffs' allegation that the defendant was aware of, but did not take any actions to mitigate, its emission of noxious odors, which caused public complaints and permit violations, was sufficient

to establish the defendant's required mental state for a nuisance claim).  Accordingly, the Court concludes that the Class has plausibly pled that 3M had the requisite mental state to sustain a nuisance claim.

Fourth, with respect to whether the Class has alleged a public nuisance claim, 3M argues that the Class has not suffered a "special injury" separate from any injuries suffered by members of the public.  3M Mot. at 23.  Specifically, 3M asserts that the Class's alleged injury of "interfere[nce] with public health and safety" due to "water contamination" from PFOA in water provided by MWC is an injury that would be common to the public.  *See id.* at 24.  The Class responds that their injury is distinct from that of the general public because the injury alleged is specific to their property interests as property owners in the Class, which is limited to "New Jersey residents who are [MWC] customers and who receive all of some of their drinking water from [the Park Avenue Wells]."  *See* FAC ¶ 74; *see also* Opp'n to 3M at 32.

The Court agrees with the Class.  In *Corradetti v. Sanitary Landfill, Inc.*, 912 F. Supp. 2d 156, 162-163 (D.N.J. 2012), the plaintiffs argued that they had suffered a special injury as a result of the defendants' pollution that contaminated the plaintiffs' drinking water and migrated onto their property.  The district court concluded that the plaintiffs had sufficiently pled a special injury. *Id.* at 163.  Here, the Court agrees with the analysis in *Corradetti* and, thus, concludes that the Class has plausibly pled a special injury.

3M mentions that courts have rejected attempts to "shoehorn allegations of environmental pollution into claims of common-law nuisance."  3M Mot. at 16.  The Court agrees to a certain extent because it is true that New Jersey courts have moved away from common law trespass and nuisance claims and toward a strict liability theory in environmental pollution cases.  *See Klockner & Klockner*, 811 F. Supp. at 1053 (D.N.J. 1993).  But while dismissal of these types of claims may

be appropriate in later stages of litigation, the Court finds that it is not appropriate at the motion to dismiss stage. *See id.* (declining to dismiss nuisance and trespass claims in an environmental pollution case at the motion to dismiss stage).

For the reasons set forth in the preceding paragraphs, the Class has plausibly pled a nuisance claim against 3M.

### 4.     *Count IV – Trespass is adequately pled*

Finally, the Court must address whether the Class has stated a claim for trespass against 3M. Under New Jersey law, a trespass consists of "unauthorized entry (usually of a tangible matter) onto the property of another." *New Jersey Turnpike Auth. v. PPG Indus., Inc.*, 16 F. Supp. 2d 460, 478 (D.N.J. 1998), *aff'd* 197 F.3d 96 (3d Cir. 1999) (citation omitted). A plaintiff asserting a trespass claim must establish two elements: (1) an entry onto its property; and (2) that entry is unauthorized. *See Rowe*, 262 F.R.D. at 263. But liability only attaches where a plaintiff can also demonstrate that "intentional, reckless or negligent conduct, or the conduct of abnormally dangerous activity[]" caused the unauthorized entry. *See Restatement (Second) of Torts*, §§ 165-66.

The Class alleges that "3M's negligent manufacturing and distribution of PFAS and related chemicals has caused a PFOA-contaminated water supply to enter onto [the Class's] properties without their permission, constituting an invasion by a foreign substance and an unauthorized trespass." FAC ¶ 109. And that "3M knew or should have known of the likelihood that its negligent production and distribution of PFOA would cause PFOA-contaminated water to invade [the Class's] properties and cause damage[.]" *Id.* ¶ 110.

3M argues that liability cannot attach because the Class does not plausibly allege the requisite mental state. Specifically, 3M asserts that the Class does not allege that 3M either entered

onto the Class's land, that 3M released PFOA onto the Class's land, nor that 3M released PFOA with knowledge that the chemical would end up on the Class's land with substantial certainty.  3M Mot. at 25.

The Court disagrees with 3M.  It is clear from the face of the FAC that the Class plausibly alleges that the PFOA-contaminated water invaded their properties as a result of 3M's negligent manufacturing and distribution of PFAS and that 3M knew or should have known that its negligent conduct would cause that invasion.  *See Severa v. Solvay Specialty Polymers USA, LLC*, 524 F. Supp. 3d 381, 398 (D.N.J. 2021) (finding that the plaintiff plausibly pled a trespass claim by stating that defendants "intentionally, recklessly, or negligently discharged PFAS which ultimate entered into their homes through water contaminated with PFNA, they never consented to PFNA on their properties, and they have been harmed and continue to be harmed by this unpermitted past and continuing presence of [d]efendants' PFNA on their property and in their bodies.").

Additionally, 3M asserts that trespass is generally "an inappropriate theory of liability" for claims of environmental pollution.  3M Mot. at 24.  The Court's discussion of 3M's identical argument raised with respect to the Class's nuisance claim, *supra Section III.B.4.*, also applies to the Class's trespass claim.  Thus, the Court declines to dismiss the Class's trespass claim at this stage based on 3M's argument that courts disfavor common law trespass claims in cases related to environmental contamination.  *See Rockaway*, 811 F. Supp. At 1053 (declining to dismiss common law nuisance and trespass claims at the motion to dismiss stage simply because New Jersey courts favor claims brought under a strict liability theory where the claims relate to environmental pollution).

Accordingly, the Class has adequately pled a common law trespass claim against 3M.

**IV.      CONCLUSION**

For the reasons stated herein, MWC and 3M's respective motions to dismiss will be

**DENIED**.  An appropriate Order accompanies this Opinion.


Dated: October 31, 2022

_____

Hon. Evelyn Padin, U.S.D.J.